IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

IN RE:  TILDA MARIE                               CASE NO.: 5:15-bk-15772
        CHAMBERS LEAKS, DEBTOR        CHAPTER 13

## MEMORANDUM OPINION

Before the court is a *Motion for Avoidance of Lien of Department of Workforce Services* ("Motion") filed by the debtor, Tilda Marie Chambers Leaks ("debtor"), on April 7, 2016.  Jack W. Gooding, the Chapter 13 Standing Trustee, filed his *Trustee's Response to Motion for Avoidance of Lien of Department of Workforce Services* as did Daryl E. Bassett, the Director ("Director") of the Arkansas Department of Workforce Services ("Workforce Services"), by his *Creditor's Response to Debtor's Motion to Avoid Lien of the Arkansas Department of Workforce Services* (collectively, the "Responses").  The Responses sought to deny the debtor's requested relief.  The court heard the Motion and Responses on May 24, 2016, and took the matter under advisement.  For the reasons stated herein, the relief requested in the Motion is granted.

### I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

### II. Findings of Fact

The debtor filed for Chapter 13 relief on November 13, 2015.  She claimed all of her real and personal property as exempt.  In her Motion, the debtor describes a "pre-petition judgment" against her obtained by Workforce Services in the amount of $2314.98. (Mot. for Avoidance of Lien of Dept. of Workforce Serv. ¶ 3, Apr. 7, 2016, ECF No. 35.)  The debtor seeks to avoid the

"above-described judicial lien" pursuant to 11 U.S.C. § 522(f) as one impairing her exemptions. (Mot. ¶ 6, ECF No. 35.) Although described in the Motion as a "pre-petition judgment," the lien is actually represented not by a traditional court-generated judgment but rather by two Certificates of Overpayment of Unemployment Insurance Benefits Levied by the Department of Workforce Services Act (the "Certificate" or "Certificates"). (Creditor Exs. 1, 2.) The underlying indebtedness represents the debtor's receipt of unemployment compensation benefits to which she was not entitled. The Certificates are dated March 5, 2012, and February 27, 2015. (Creditor Exs. 1, 2.) The clerk of the circuit court recorded them on March 6, 2012, and March 2, 2015, respectively. (Creditor Exs. 1, 2.)

The debtor testified that prior to the issuance and recording of the Certificates, in November 2011, she received a letter from Workforce Services concerning overpayment due to her alleged failure to accurately report her income. The debtor recalled that she appealed that determination and engaged in a hearing—possibly by phone. The debtor received a similar letter in 2012.

Each Certificate is styled "In the Circuit Court of Calhoun County, Arkansas" and lists the Director as "Plaintiff" and the debtor as "Defendant." (Creditor Exs. 1, 2.) In substance, each Certificate is a certification by the Director that a "final notification was made to the defendant of the assessment of delinquent overpayments levied by the Department of Workforce Services Act, past due and unpaid by said defendant, and on the same date, a copy of said overpayment was delivered to said defendant." (Creditor Exs. 1, 2.) The Director further certified "that all appeal rights have been exhausted pursuant to A.C.A. § 11-10-532(d), and [he] now certif[ies] to you, as Clerk of the said Circuit Court, the amount of said delinquent overpayment due by the said defendant is [a sum certain] plus court costs." (Creditor Exs. 1, 2.)

Thereafter, the Certificates provide a "Notice of Lien" that, pursuant to Arkansas Code Annotated § 11-10-532(d), a lien is created "upon all real and personal property owned by the above-named defendant to secure payment of the amount shown above." (Creditor Exs. 1, 2.) At the bottom of each Certificate is a "Note to Clerk" instructing the clerk to file the Certificate "in the records of the Circuit Court for judgments and decrees under the procedure prescribed for filing transcripts of judgment by Arkansas Code Annotated § 16-19-1011, as provided by Arkansas Code Annotated § 11-10-532(d), as amended." (Creditor Exs. 1, 2.)

### III.  Discussion

#### A.  Case Law

The debtor seeks to characterize the Certificates as judicial liens that are amenable to avoidance under section 522(f).  Workforce Services contends that its liens are statutory liens and, as such, are not avoidable.  The Chapter 13 Standing Trustee concurs.  All parties concede that the only issue before this court is whether the Certificates represent avoidable judicial liens or unavoidable statutory liens.  An analysis of the facts and appropriate law compels the conclusion that the Certificates represent avoidable judicial liens as they do not "aris[e] solely by force of a statute on specified circumstances or conditions," but rather as a result of "other legal or equitable process or proceeding."  11 U.S.C. § 101(53), (36) (2016).

> Section 522(f)(1) of the Code provides:
>
> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
>> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)[.]

11 U.S.C. § 522(f) (2016).

3

The Code defines a judicial lien as one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). Conversely, a statutory lien is one "arising solely by force of a statute on specified circumstances or conditions, . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53).

In support of her argument, the debtor relies principally on Arkansas Code Annotated § 11-10-532(d)(3), which provides: "[a]fter entry by the circuit clerk, the [C]ertificate of overpayment *shall have the force of a judgment* of the circuit court and shall bear interest at the rate of ten percent (10%) annually." ARK. CODE ANN. § 11-10-532(d)(3) (2016) (emphasis added). Reliance on that singular provision, however, is not sufficient to conclusively characterize the Certificate as a judicial lien.

The Third Circuit reached that conclusion in *In re Schick*, 418 F.3d 321 (3rd Cir. 2005). *Schick* presented the court with the issue of whether a lien held by the New Jersey Motor Vehicles Commission was a statutory or judicial lien for purposes of lien avoidance under section 522(f). 418 F.3d at 322. The New Jersey statutory scheme that imposed the lien contained a provision similar to the one in Arkansas whereby the docketing of the certificate would have the same force and effect as a civil judgment and would be amenable to collection accordingly. *Schick*, 418 F.3d at 325. In analyzing "whether it arises solely by force of statute, or whether it results from some type of judicial process or proceeding," the Third Circuit analogized to an earlier decision involving unpaid water bills. *Id.* at 324–25. Discussing that case, where the debtor argued that the lien statute created a judicial lien, the *Schick* court stated:

> We disagreed, finding that the lien was statutory because it was not obtained by any "legal process or proceeding" within the meaning of the

4

definition of a judicial lien, 11 U.S.C. § 101(36). We explained that these terms "inherently relate to court procedures or perhaps similar administrative proceedings." Although we recognized that in some circumstances a judicial proceeding may be *ex parte*, we concluded that where the Water Department administratively determined the amount of the lien, and the prothonotary's sole responsibility was to docket the lien as delivered, the lien fell within the Code's definition of a statutory lien as it arose "solely by force of statute." In addition, we rejected the argument that the act of docketing the City's lien in the judgment index by the prothonotary rendered the lien a judicial lien:

> [D]ocketing simply would be a specified condition for creation of the statutory lien as defined in 11 U.S.C. § 101(53). The legislative history of the Bankruptcy Code, which demonstrates that mechanics' liens can be statutory, supports this conclusion. Inasmuch as at least in some states public filing is required to preserve mechanics' liens, there is no reason why the requirement that a water lien be docketed means that it cannot be statutory.

We find *Graffen* to be persuasive in this case based on the similarities between the Pennsylvania water lien statute and the New Jersey surcharge statute. For instance, as with the water lien statute in *Graffen*, the amount of the debt here is determined either as a matter of statute or administrative regulation, as noted above. Moreover, like the prothonotary in *Graffen*, the only duty of the Clerk of the Superior Court, with respect to the lien, is to docket the certificates of debt as delivered in "the amount of the debt so certified." As we made clear in *Graffen*, the mere act of docketing a debt by the Clerk of the Superior Court as part of his ministerial duties is insufficient to render the MVC's lien a judicial lien. Nor is there is any "legal process or proceeding" here within the meaning of the definition of a judicial lien, 11 U.S.C. § 101(36), nor any other type of "court procedures or perhaps similar administrative proceedings." Rather, the requirement that the certificates of debt be docketed is one of the specified conditions for the creation of the statutory lien. In these circumstances, the lien held by the MVC is one that arises "solely by force of statute" within the definition of a statutory lien, in 11 U.S.C. § 101(53).

*Id.* at 325–26 (citations omitted).

The *Schick* court persuasively concluded:

> Thus, for a lien to be judicial, there must be some judicial *or administrative process or proceeding that ultimately results in the obtaining of the lien*. We implied that these terms are all related to such processes or proceedings in *Graffen*, stating that these "terms inherently related to court procedures or *perhaps similar administrative proceedings*."

*Id.* at 328 (citations omitted) (emphasis added).

5

A recent Wisconsin case represents a natural and logical extension of the *Schick* analysis. In *Beck*, the Wisconsin Department of Workforce Development ("Workforce Department") sought to reclaim an overpayment of unemployment benefits due to the debtor's misrepresentations concerning entitlement. *In re Beck*, No. 15-29541-svk, 2016 WL 489892, at *1 (Bankr. E.D. Wis. Feb. 5, 2016). The debtor sought to avoid the department's secured claim as a judicial lien that impaired the debtor's exemptions pursuant to section 522(f). *Id.*

In *Beck,* the court distinguished between statutory liens and judicial liens created by Wisconsin statutes. Some statutes "create a lien by their very texts"; thus, "[t]he statutes themselves create the liens automatically, without any judicial, legal or other process," which is "the essence of a statutory lien." *Id.* at *3. In contrast, the Workforce Department's warrant (similar to the Certificates) "involve[s] process, including an administrative determination of whether the cause of the overpayment was the Debtor's false statements or misrepresentations." *Id.* at *3. In *Beck*, the process involved: an initial determination by the Workforce Department; a copy of the determination being sent to the debtor; the ability of the debtor to dispute the obligation; the opportunity for a hearing conducted by an appeal tribunal; the ability of the appeal tribunal to affirm, reverse, or modify the determination; the ability to seek review of the appeal tribunal's decision; and the opportunity to seek judicial review in circuit court. *Id.* at *1. Once that process concluded, the Workforce Department could issue a warrant to the circuit court clerk, which warrant would be filed of record and "considered in all respects as a final judgment constituting a perfected lien" on the debtor's real and personal property. *Id.* at *2. The court concluded that "the existence of [] procedures in the statutory scheme support[ed] the conclusion that [the Workforce Department's] lien against the Debtor [wa]s a judicial lien, not a statutory lien." *Id.* at *3.

6

Contrary to the *Beck* decision and distinguishable from the present facts, the court in *Braxton* declared an agency's lien to be a statutory lien incapable of avoidance. *Braxton v. Bureau of Unemp't Comp. Benefits and Allowances* (*In re Braxton*), 224 B.R. 564 (Bankr. W.D. Pa. 1998).

> The lien claim in question is not a judicial lien as defined in 11 U.S.C. § 101[36] because it does not arise from entry of a judgment nor from any levy, sequestration, or other legal or equitable process or proceeding. A "judgment" is a final determination by a court. Here, no court was involved. Nor are we dealing with a "levy" or a "sequestration." The notice filed was not a legal or equitable proceeding since no court of law or equity caused its filing nor caused it to become a lien.

224 B.R. at 569.

In *Braxton*, the court emphasized court participation. In isolation, and uniquely premised on the truncated process in the Pennsylvania statutes in question, *Braxton* is distinguishable both under *Beck* and under the facts presently before this court. As pointed out in *Beck*, the Code's definition of a judicial lien is not so restrictive. While the definition specifically references a *lien* "obtained by judgment" with attendant levy and sequestration, it equally includes a *lien* obtained by "other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The *Beck* court found this language to be dispositive, and this court concurs.

In *Smith*, another court dealt with a statutory scheme involving workers' compensation insurance. *Smith v. Botzet* (*In re Smith*), 401 B.R. 674 (Bankr. E.D. Pa. 2009). Relying on *Schick*, the court concluded that a statutory scheme that allowed the simple filing of a certified copy of a claim petition to automatically create a judgment compelled the conclusion that it was a statutory as opposed to judicial lien. *Id.* at 683–85.

> No judicial process or proceeding had determined liability or damages when Mr. Botzet filed his Claim Petition with the Prothonotary. To the contrary, the only basis for the creation of Mr. Botzet's judgment and the resulting Real Property Lien was the filing of the Claim Petition pursuant to Section 428 of the Workers' Compensation Act.

7

*Id.* at 683. The procedure in Pennsylvania did allow for administrative hearings *thereafter* to revise, reduce, or increase the claimed amount. *Id.* at 684. The *Smith* court went on to recognize possible distinctions[1] and left some room for a contrary result in referencing a New Jersey statute, stating:

> The decision in *Downey* is based upon the court's construction of the New Jersey workers' compensation statute, which differs substantially from the Pennsylvania statute. Significantly, a lien is created under the New Jersey statute only after the Director files with the Clerk of Court either (1) a statement containing findings of fact, conclusions of law, award and judgment or (2) a certified copy of the order imposing, and the demand for payment of, the assessment.
>
> The New Jersey statute, unlike its Pennsylvania counterpart, permits the creation of a lien on real property *only after a full administrative decision is rendered* against the employer. Section 428 of the Pennsylvania Workers' Compensation Act, on the other hand, provides for the immediate creation of the judgment and its resultant lien on real property simply upon the filing of a claim petition with the prothonotary. No judicial, quasi-judicial, or administrative determination of liability or amount of compensation and damages is made until after the claim petition has already been filed as a judgment.

*Id.* at 686 (citations omitted) (emphasis added).

In considering a similar avoidance request involving a workers' compensation lien, the court in *Newton* observed:

> The plain language of the statute sets forth two pre-requisites for the imposition of a lien: 1) a claim must be filed; and 2) the executive director must ascertain whether the employer, or any other applicable person against whom the claim is filed, has secured payment by either insurance coverage or qualifying as a self-insurer. After the claim is filed and the determination made, the executive director can record the certificate which constitutes a lien. Simply stated, this administrative action by the director does not constitute a judicial or quasi-judicial process. The fact that a judicial process may be involved after the recordation of the certificate/lien, does not transform this lien from a statutory lien to a judicial lien. This is akin to an argument that because a foreclosure is necessary to execute upon a lien, all liens are judicial liens.

---

[1] The court in *Smith* applied a different result in the context of a personal property lien that required "quasi-judicial review and approval" before the sheriff was permitted to levy. *Id.* at 690.

8

*In re Newton*, 402 B.R. 771, 774 (Bankr. W.D. Ky. 2009).

In sum, while the certificate in *Newton* contained plaintiff and defendant terminology and the debtor had the right to discovery, an evidentiary hearing, and the potential for an adjudication by an Administrative Law Judge, that subsequent judicial process did not "transform th[e] lien into . . . a judicial lien." *Id.* "While the filing of a claim may have started a judicial process, the creation and recordation of the liens originated from a purely statutory standpoint. . . . No judicial action was needed before the lien could be recorded, and thus, this is a statutory liens (sic) and not a judicial lien subject to lien avoidance." *Id.* The Arkansas statutory scheme, however, compels a different result—one more in line with the reasoning in *Beck*.

### B.  Arkansas Statutes

An analysis of the Arkansas statutory scheme requires an initial focus on the definitions of the two types of liens concerned. Specifically, the Bankruptcy Code defines a judicial lien as a "*lien* obtained by *judgment*, levy, sequestration, *or other legal or equitable process or proceeding*." 11 U.S.C. § 101(36) (emphasis added). The definition is expansive; it does not contemplate solely court judgments. While the term "judicial lien" unquestionably includes liens obtained by traditional means, i.e., a judgment, it also and equally includes liens obtained by "other legal or equitable process or proceeding." To rely exclusively on the judgment of a court would be to ignore this second type of specific and defined judicial lien. The Certificates are clearly not judgments entered by a court after traditional litigation. Accordingly, the court's analysis turns to whether the lien represented by the Certificates is one resulting from an "other legal or equitable process or proceeding" or a statutory lien as defined by the Code.

The Code defines a statutory lien as one "arising solely by force of a statute *on specified circumstances or conditions*[.]" 11 U.S.C. § 101(53) (emphasis added). Simply stated, does the

9

lien arise upon the mere occurrence of specific events. A statutory lien is limited and quantified; if certain events or circumstances occur as articulated in the statute, a lien arises that is statutory in nature and unavoidable. Conversely, if the statutory scheme contemplates a legal process or proceeding that could, or could not, result in a judgment or a lien enforceable as a judgment, then it is judicial and avoidable. The pertinent Arkansas statutes conclusively demonstrate that the Certificates and attendant liens result from a legal process or proceeding and do not arise upon the mere occurrence of specific events.

The principle Arkansas statute concerning Workforce Services's lien is section 11-10-532, which states:

> (a)(1) If the Director of the Department of Workforce Services finds that a person knowingly has made a false statement or misrepresentation of a material fact or knowingly has failed to disclose a material fact and as a result of either action has received benefits under this chapter to which he or she was not entitled, then he or she is liable to repay the amount to the Unemployment Compensation Fund, or the director may recover the amount of the overpayment by deductions from any future benefits payable to the person under this chapter.
>
> (2) *Once the overpayment becomes final pursuant to § 11-10-527*, the amount owed shall accrue interest at the rate of ten percent (10%) per annum beginning thirty (30) days after the date of the first billing statement.
>
> . . . .
>
> (d)(1) *When an overpayment becomes final under § 11-10-527, the director shall present a certificate of overpayment describing the amount owed by the claimant to the circuit clerk of the county where the claimant is domiciled.*
>
> (2) The circuit clerk shall enter the certificate of overpayment in the docket of the circuit court for judgments and decrees and note the time of the filing of the certificate.
>
> (3) After entry by the circuit clerk, *the certificate of overpayment shall have the force of a judgment* of the circuit court and shall bear interest at the rate of ten percent (10%) annually.

ARK. CODE ANN. § 11-10-532 (emphasis added).

10

Accordingly, the procedure permitting the Director to initiate the collection process through the issuance of a certificate for filing by the circuit clerk, which has the full force of a judgment at law for which collection may issue, commences only *after* the overpayment determination "becomes final pursuant to § 11-10-527[.]" ARK. CODE ANN. § 11-10-532(d)(1), (3) (emphasis added). Thus, processes and proceedings precede the finality represented by the Certificate. This analysis is confirmed in the very wording of the Certificate where the Director "further certif[ies] that all appeal rights have been exhausted pursuant to A.C.A. §11-10-532(d)[.]" (Creditor Exs. 1, 2.)

This process, made conclusive by section 527, is outlined in section 524, which provides:

(a)(1) The claimant, the Director of the Department of Workforce Services, or any other party entitled to notice may appeal a determination made by the agency by filing a written notice of appeal with the appeal tribunal or at any office of the Department of Workforce Services within twenty (20) calendar days after the date of mailing the notice to his or her last known address, or if the notice is not mailed, within twenty (20) calendar days after the date of delivery of the notice. If mailed, an appeal shall be considered to have been filed as of the date of the postmark on the envelope.

. . . .

(b)(1) Unless the appeal is withdrawn with its permission or is removed to the board, the appeal tribunal, after affording the parties a reasonable opportunity for a fair hearing, and on the basis of the record, shall affirm, modify, reverse, dismiss, or remand the determination.

> (2) However, whenever an appeal involves a question as to whether services were performed by a claimant in employment or for an employing unit, the appeal tribunal shall give special notice of the issue and of the pendency of the appeal to the employing unit and to the director, both of whom shall be parties to the proceedings and be afforded a reasonable opportunity to present evidence bearing on the question in issue.
>
> (3) The appeal tribunal shall grant upon request from any interested party in an intrastate claim an in-person hearing.

>   (c)(1) The parties shall be promptly notified of the tribunal's decision and shall be furnished a copy of the decision and the findings and conclusions in support thereof.
>
>>   (2) The decision shall become final unless within twenty (20) calendar days after the date of mailing the notice to the parties' last known addresses an appeal is initiated pursuant to § 11-10-525 or a request for reopening is made pursuant to subsection (d) of this section.
>
>   (d)(1) If any party fails to appear at the initial tribunal hearing scheduled as a result of an appeal, that party may request that the matter be reopened by the tribunal.
>
>>   (2) Requests for reopening shall be made in writing and shall be granted by the tribunal only upon a showing of good cause for failing to appear at the initial tribunal hearing.
>
>>   (3)(A)(i) If a request for reopening is granted, the tribunal shall schedule another hearing, after which it will issue a new decision.
>
>>>   (ii) If a request for reopening is not granted, the tribunal's initial decision shall stand as issued.
>
>>   (B)(i) In either event, the parties shall be promptly notified of the tribunal's decision and shall be furnished a copy of the decision and the findings and conclusions in support thereof.
>
>>>   (ii) The decision shall become final unless within twenty (20) calendar days after the date of its mailing to the parties' last known addresses an appeal is initiated pursuant to § 11-10-525.

ARK. CODE ANN. § 11-10-524 (2016).

Additional statutory provisions detail the creation of a board of review to hear and decide appeal claims, including a full-time and salaried chairman. ARK. CODE ANN. § 11-10-523(a), (b) (2016). An examiner may be employed. ARK. CODE ANN. § 11-10-523(d). Hearings may be conducted. ARK. CODE ANN. § 11-10-523(d)(1). Matters can be heard by an appeals tribunal subject to a full board review. ARK. CODE ANN. § 11-10-523(g). The board may rely on the record or may direct the taking of additional evidence and then "may affirm, modify, reverse, dismiss, or remand the case." ARK. CODE ANN. § 11-10-525(c)(1) (2016). Thereafter, a party

may request judicial review. ARK. CODE ANN. § 11-10-525(e), 529 (2016). While the board and appeal tribunal are not bound by common law or statutory rules of evidence, "any hearing or appeal before the tribunals shall be conducted in such manner as to ascertain the substantial rights of the parties." ARK. CODE ANN. § 11-10-526(a)(1) (2016). Further, "the board may adopt reasonable regulations governing the manner of filing appeals, the conduct of hearings, and other appellate procedures, consistent with this chapter." ARK. CODE ANN. § 11-10-526(a)(2). Witnesses may be subpoenaed, and a record is kept. ARK. CODE ANN. § 11-10-526(e), (f); ARK. CODE ANN. § 11-10-315, 316 (2016).

The decision of the board and the principles of law relied upon, have precedential effect. Specifically:

> (a) The final decisions of the Board of Review or of an appeal tribunal, and the principles of law declared by it in arriving at the decisions, unless expressly or impliedly overruled by a later decision of the board or by a court of competent jurisdiction, shall be binding upon the Director of the Department of Workforce Services and any examiner or appeal tribunal in subsequent proceedings which involve similar questions of law.
>
> (b)(1) However, if in connection with any subsequent proceeding, the director, an examiner, or appeal tribunal has serious doubt as to the correctness of any principle so declared, then they may certify their findings of fact in the case, together with the question of law involved, to the board.
>
> . . . .
>
> (d) Any decision made under this section after removal of the proceeding upon a claim to the board shall have the effect of a decision under § 11-10-525 and shall be subject to judicial review within the same time and to the same extent.

ARK. CODE ANN. § 11-10-528 (2016).

Finally, the parties can appeal the decision of the board of review to the Arkansas Court of Appeals, which "proceedings shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the Workers' Compensation Law,

§ 11-9-101 et seq." ARK. CODE ANN. § 11-10-529(a)(1)(A), (d)(1). Plainly, the Arkansas Code provides for an extensive process that determines or adjudicates the existence and conclusive validity of the liability amount initially determined and asserted by the Director. This process is completed prior to the issuance of the Certificate on which the lien is predicated. Accordingly, the liens represented by the Certificates are the result of a process or proceeding within the meaning of the Code's definition of a judicial lien and as such are avoidable under section 522(f).

### IV. Conclusion

For the reasons stated herein, the relief requested in the Motion is granted. A separate judgment will be entered to this effect.

IT IS SO ORDERED.

Dated this 8th day of July, 2016.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Tilda Marie Chambers Leaks
    Ben D. Perry
    James C. Hunt
    Gregory Ferguson
    Jack W. Gooding